## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**CLINTON BALL JR., as Administratrix of,**
**and Personal Representative on Behalf of the**
**Wrongful Death Beneficiaries of the Estate of**
**NIJA BONHOMME, Deceased**

**Versus**                                    **CIVIL ACTION NO.: 1:21cv273 TBM-RPM**

**MANAGEMENT & TRAINING CORPORATION**
**LAURA JACKSON, BREYETTA BRENGETTSY,**
**BIANCA REESE, KAREN BROWN,**
**WHITNEY BROWN, MICHAEL JOHNSON,**
**JASON JOHNSON, ESHUNNA ROBINSON,**
**LINDA WYATT, JODY BRADLEY,**
**MICHAEL TURNER, TRAVIS BLANTON**
**ELLA SCOTT, JE'MARCUS GRACE**
**JOHN AND JANE DOES**
### FIRST AMENDED COMPLAINT

*Jury Trial Demanded*

1.      This Complaint is brought by CLINTON BALL JR. (hereinafter, "Plaintiff"),

Individually and as Personal Representative on behalf of the wrongful death beneficiaries

of NIJA BONHOMME (hereinafter, "Decedent"), by and through undersigned counsel,

against Management & Training Corporation (hereinafter, "Defendant") and John and

Jane Does 15-100.

### JURISDICTION AND VENUE

2.      This jurisdiction of this Court is invoked pursuant to 28 U.S.C § § 1331, 1332 and

1343, as well as 42 U.S.C § 1983.  Subject matter jurisdiction is also appropriate in

federal court since a federal question is raised pursuant to the 8th and 14th Amendments to

the United States Constitution, and as a Plaintiff and Defendant are citizens of different

states and the amount in controversy exceeds $75,000.00.  The Court also had pendent

jurisdiction over the Plaintiff's State cause of action.

3.       Venue is appropriate in this Court under § 1391(b) and § 1392, the administrator

bringing the lawsuit lives in Pearl River County, MS, and the Estate was opened in Pearl

River County, which is located within the Southern District of the United States District

Court, Southern Division.

## **PARTIES**

4.       Plaintiff, Clinton Ball Jr., is an adult resident citizen of Pearl River County,

Mississippi.  His address is 1202 Roosevelt Street Picayune, Mississippi 39466.  Plaintiff,

the father of the Decedent, brings this action individually and on behalf of the surviving

heirs/wrongful death beneficiaries of Decedent: a minor ALC DOB: 2/27/15, his natural

daughter, and a minor AC DOB: 11/29/16, his natural son.

5.       Decedent was, at all times material to this Complaint, an adult incarcerated at the

Wilkinson County Correctional Facility (hereinafter, "WCCF"), located in Woodville,

Wilkinson County, Mississippi.  Substantial acts, omissions, and events that caused the

Decedent's death took place in Wilkinson County, Mississippi.  At the time of the

incident which gives rise to this Complaint, Decedent was a 24-year-old citizen of the

State of Mississippi, and a prisoner incarcerated at WCCF.  Plaintiff, as Personal

Representative, brings this action pursuant to Miss. Code Ann. § 11-7-13 (1972), the

Wrongful Death Statute.

6.       Defendant, Management & Training Corporation (hereinafter, "MTC), a national for-

profit prison operator incorporated and existing in the State of Utah, is under contract

with the Mississippi Department of Corrections, ("MDOC") for the management and

oversight of the prison's daily operations, under which it has the responsibility for providing humane care and treatment consistent with all constitutional and ACA standards. MTC's 5,545 employee Corrections division operates twenty-two (22) correctional facilities throughout the United States, having seventeen (17) contracts with state correctional departments and seven (7) with federal correctional agencies. MTC is a Delaware Corporation with its principal place of business located at 500 North Marketplace Drive, Centerville, Utah 84014, and is subject to the in personam jurisdiction of the Court by service of process upon its appointed registered agent, CT Corporation System, located at 645 Lakeland East Drive, Suite 101, Flowood, Rankin County, Mississippi 39232.

7.a.    Correctional Officer Laura Jackson is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.b.    Sergeant Breyetta Brengettsy is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.c.    Sergeant Bianca Reese is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.d.    Unit Manager Karen Brown is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.e.    Correctional Officer Whitney Brown is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.f.    Sergeant Michael Johnson is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.g.    Sergeant Jason Johnson is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.h.    Captain Ella Scott is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.i.    Nurse Eshunna Robinson is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.j.    Correctional Officer Linda Wyatt is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.k.    Warden Jody Bradley is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.l.    Lieutenant Michael Turner is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.m.    Sergeant Travis Blanton is an adult resident citizen of the state of Mississippi and can be served with process through counsel for Management and Training Corporation, Steve Griffin.

7.n.    Je'Marcus Grace is an inmate at the Central Mississippi Correctional Facility and can be served through the Mississippi Department of Corrections.

7.o.    Plaintiff is ignorant as to the identities of Defendant John and Jane Does 15-100 (hereinafter, "Doe Defendants") who are unknown officers, employees, agents, and/or servants of MTC. Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Decedent's damages, as alleged herein, were proximately caused by their conduct. Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendants herein, and were at all times acting under the color of law with the permission and consent of Defendant within the course and scope of their employment.

## **FACTS**

8.    On or about August 20, 2018, Decedent was strangled to death by Je'Marcus Grace, an inmate at WCCF. He was also brutally beaten, strangled and murdered.

9.    Decedent was injured at MTC's facility in Meridian, and he Pro Se filed his own Complaint against them. (See Exhibit "A"). He was then transferred to MTC's facility in Wilkinson County, which was perhaps the most dangerous place in Mississippi. While there, he was threatened by gang members, and he sought help from the facility. Help was not provided. In fact, the gangs were more in charge of the facility than the employees of MTC. MTC recognized this fact, and so described this serious problem as documented in its own internal memorandum. MTC failed to act upon the danger to Bonhomme, and in fact, for several weeks prior to his murder, Decedent was not in his assigned cell. Decedent's family also called the Defendant countless times to plead for

help; however, nothing was done.  He was at the mercy of the gangs with absolutely no protection from the people sworn to protect him.

Based upon new information provided by the Defendant, MTC, Correctional Officer Whitney Brown was told by inmates that there was a gang conflict in the cell where Bonhomme was locked up, and she nevertheless made them stay in a hostile and deadly cell, which resulted in a murder.  There was an altercation the day before the death with the same two inmates before Bonhomme was killed.  Although we do not have an incident report of the fight or gang problems reference herein, a later report shows that said officer was warned and she simply threatened to lock them down, rather than separate and protect them.

Video surveillance prior to the killing and the statements of inmates will show that the guards did nothing to prevent the fight or get medical assistance a Bonhomme laid in the cell dying for an unreasonable period of time.  (Note, conflicting information shows that it was possibly over a day, although this fact is not yet clear.)

The guards failed to make adequate rounds to inspect and check upon Bonhomme and said negligence resulted in his needless death. As indicated by the internal memorandum of MTC, the gangs were more in control of the prison than the guards. While Bonhomme laid unconscious but breathing, Je'Marcus Grace attempted to get help by letting the other inmates who were tasked with the responsibility of checking upon the people locked in the cells rather than the correctional officers.  The inmates did not secure medical help until it was too late.  By the time medical help arrived, Bonhomme was cold to the touch, thus indicating his having long passed away.

When Officer Whitney Brown placed Bonhomme into the cell, despite being warned of the danger, the negligence stems from the failure of MTC, from the management to the officers on the floor who stood by and allowed Bonhomme to be beaten to death and lay dying, without medical help, without supervision, and without concern for the life of a dying young man in their total control. Although John and Jane Does will be revealed in discovery, it is known at this time that the following failed to manage, supervise, train and care for Bonhomme, resulting in his unnecessary and tragic death: Laura Jackson, Breyetta Brengettsy, Bianca Reese, Karen Brown, Whitney Brown, Michael Johnson, Jason Johnson, Eshunna Robinson, Linda Wyatt, Jody Bradley, Michael Turner, Travis Blanton, Ella Scott.

## <u>1983 CAUSES OF ACTION</u>

10.    Plaintiff incorporates all allegations set forth in Paragraphs 1 through 9 hereinabove.

11.    The Defendant's employees knew or should have known that the gangs posed a threat to the Decedent on August 20, 2018.  MTC officials knew that Decedent was in danger of the gangs, because he reached out for help on multiple occasions, and finally filing his own lawsuit for the lack of protection he was getting from the guards and correctional officers.

    a.  Cruel and unusual punishment under the Eighth and Fourteenth Amendments;

    b.  Decedent's right not to be deprived of liberty without the due process of law;

    c.  Decedent's right to be safe and protected from injuries while in Defendant's custody; and

    d.  Decedent's right to be protected by the correctional officers while under their control.

     e.   Failure to provide timely and adequate medical care.

     f.   Allowing gangs to control and operate the facility and have the responsibility of supervision rather than the correctional officers providing supervision.

     g.   Improper placement into cells of hostile parties without taking any precautions to prevent altercations and murder, and not providing protection from other detainees.

12.    Doe Defendant's actions clearly were not objectively reasonable. At all times, the Doe Defendants were acting under the color of state law.

13.    As a direct and foreseeable result of the Doe Defendant's actions, Plaintiff suffered damage including, but not limited to, physical injuries, emotional distress, mental anguish, as well as pain, suffering and death.

14.    Defendant MTC, by and through Doe Defendant's in their individual and official capacities, established customs, policies and procedures which directly and proximately caused the deprivation of the Decedent's constitutional rights as alleged herein. Defendants were deliberately indifferent to the safety of the Decedent and other WCCF inmates. These policies created unconstitutional conditions of confinement.

15.    Such unwritten policies, customs and practices include but are not limited to the following:

     a.   inadequate and improper training, hiring, supervision and discipline of WCCF officers;

     b.   failing to institute proper gang management policies and procedures;

     c.   failing to prevent and/or investigate threats of violence made against inmates by other inmates which are reported to WCCF officials;

d.  failing to establish policies and procedures to limit the flow of illegal contraband into the facility, including but not limited to drugs, weapons, and cell phones, all of which contributed to the atmosphere of violence at WCCF;

e.  failure to make proper rounds/cell checks within the established guidelines to ensure inmates' safety; and

f.  improper classification of inmates

## EPISODIC ACTS OR OMISSION

16.    Plaintiff incorporates all allegations set forth in Paragraphs 1 through 15 hereinabove.

17.    The Due Process Clause of the Eighth Amendment requires the Defendant to provide convicted inmates with basic human needs including protection from harm, during their confinement.  The Defendant and Doe Defendants had subjective knowledge of the substantial and serious threat that Bonhomme's life had been threatened in the substantial and serious threat that Bonhomme's life had been threatened in the event he chose not to act upon the gang's mandate, yet the Defendants nevertheless disregarded the risk of violence to anyone by responding to it with deliberate indifference.  Specifically, MTC allowed the Decedent to be beaten, strangled, and murdered.  Decedent was a vulnerable special needs inmate.  The Defendants and their employees clearly breached this duty and as a result, the Decedent was killed.

18.     Defendants' failure to properly investigate and respond to the warning provided by Bonhomme directly caused Bonhomme's death.  In doing so, Defendants violated clearly established constitutional rights, including but not limited to:

a.     Cruel and unusual punishment under the Eight and Fourteenth Amendments.

b.     Decedent's right not to be deprived of liberty without due process of law; and

c.     Decedent's right to be safe and protected from injury while in Defendants' custody

19.     By their failure to provide the Decedent with safe harbor while under their confinement, Defendants' actions deprived him of the rights secured for him by the United States Constitution under the Eighth and Fourteenth Amendments and federal law.

20.     As a direct and foreseeable result of Defendants' actions, Plaintiff has suffered damages including, but not limited to, emotional distress, mental anguish, as well as pain and suffering, and death.

**NEGLIGENCE/GROSS NEGLIGENCE**

21.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 20 hereinabove.

22.     At all times relevant herein, Defendants and Doe Defendants, as their employees, had a duty to exercise ordinary care for the inmates at EMCF, including the Decedent. Defendants and Doe Defendants breached that duty, by failing to use the ordinary care that a reasonable person would use to avoid a prevent injury to others, i.e. in the case sub judice, by failing to act appropriately based upon the prior awareness of Bonhomme's propensity to harm other inmates(s) per advisement to officials by the Bonhomme and his family of the threats levied against him – the failure of which led directly to the

incontrovertible permanent damage sustained by the Plaintiff.  This breach was so egregious as to amount to gross negligence.

23.     Defendants and its employees were also negligent by failing to monitor Decedent's cell on a routine basis. Had MTC's employees performed routine head counts they would have discovered Decedent in enough time to render medical assistance to him.

## NEGLIGENT HIRING AND SUPERVISION

24.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 23 hereinabove.

25.     Plaintiff alleges Defendant MTC negligently hired, supervised, and retained its employees and agents, inter alia, by 1) failing to properly care and ensure the Decedent's health, safety and well-being while incarcerated at WCCF; 2) failing to properly train, supervise, discipline, retain, hire and/or discharge its employees, agents, and/or representatives; and 3) was otherwise negligent in its care and treatment of the Decedent, and as a direct and proximate result, the Plaintiff sustained the harms alleged herein.

## RESPONDEAT SUPERIOR/VICARIOUS LIABILITY

26.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 26 hereinabove.

27.     Defendant and Doe Defendants acted with negligence, gross negligence, and/or intentionally by allowing or failing to prevent Decedent's death.  At all times relevant, each Defendant owed a duty to the Decedent to ensure his health, safety and well-being, and the Defendant's breached this duty.  The actions and inactions of Defendant and/or Doe Defendants led directly to the death of Mr. Bonhomme.  MTC, as Doe Defendant's employers, are liable for their actions which were undertaken during the course and scope of their employment.

## PUNITIVE DAMAGES

28.    The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 27 hereinabove.

29.    MTC and Doe Defendants, in their individual capacities, acted in complete disregard for the safety of the Decedent by acting in a negligent and/or grossly negligent manner as previously described herein.  The actions of these Defendants warrant punitive damages.

30.    The Defendants' actions in their individual capacities exhibited gross negligence and direct disregard of the safety of the Decedent.  Punitive damages should be awarded against the Defendants.  Defendants' tortious actions caused the wrongful death of the Decedent, and therefore, Plaintiff's emotional distress and mental anguish.

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, the Plaintiff requests that upon a jury trial of this cause, the Court will award all relief due Plaintiff as set forth herein, including but not limited to the following:

A.    Compensatory damages of, from and against the Defendants, each and severally, in an amount exceeding $75,000.00, but ultimately to be determined by this Court.  Please note that asking a family member to place a value upon the life of a loved one who was needlessly and inexcusably allowed to be beaten, strangled and murdered is close to impossible, but easily could be many **millions** of dollars

B.    Punitive damages of, from and against the Defendants, in an amount to be determined by this Court;

C.    Reasonable attorney's fees and all costs of this Court;

D.    Pre and post judgment interest; and

E.      Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the ___<sup>h</sup> day of April 2022.


                         CLINTON BALL JR., PLAINTIFF

                BY:_/s/ Michael W. Crosby____
                         MICHAEL W. CROSBY
                         See also Client's Affidavit
                         Attached hereto

OF COUNSEL:
Michael W. Crosby, Esq (MSB No. 07888)
Attorney at Law
2111 25th Avenue
Gulfport, MS 39501
Tel: (228) 865-0313
Fax: (228) 865-0337
michaelwcrosby@bellsouth.net